Sam **DENOV** and Burl Lane, Plaintiffs,

v.

**CHICAGO FEDERATION OF MUSICIANS, LOCAL 10–208, AFM, et al., Defendants.**

No. 80 C 6433.

United States District Court, N. D. Illinois, E. D.

June 11, 1981.

William A. Sidlinger, Chicago, Ill., for plaintiffs.

Marvin Gittler, Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Sam Denov and Burl Lane ("plaintiffs") are members of the two defendant labor unions, American Federation of Musicians of the United States and Canada ("AFM") and its local affiliate, Chicago Federation of Musicians, Local 10–208, AFM ("CFM"). At its June 1980 annual convention AFM adopted a membership dues increase. In this action plaintiffs claim that increase was enacted in violation of three provisions [1] of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411–415. AFM has moved to dismiss the complaint in its entirety. For the reasons stated in this memorandum

---

1. 29 U.S.C. §§ 411(a)(1) ("Section 101(a)(1)"); 411(a)(3)(A) ("Section 101(a)(3)(A)") and 411(a)(3)(B) ("Section 101(a)(3)(B)").

opinion and order AFM's motion is granted in part and denied in part.

### Facts

AFM's membership comprises nearly 300,000 professional musicians. CFM is one of some 500 AFM local unions that send delegates to AFM's conventions, in accordance with Article 5 of the AFM Constitution (the "Constitution"):

> All locals of 200 members or less shall be entitled to one delegate. All locals of not less than 201 members and not more than 400 members shall be entitled to two delegates. All locals of more than 400 members shall be entitled to three delegates. A merged local . . . shall be entitled to one additional delegate.

Under that provision CFM, a merged local with 11,156 members, was entitled to 4 of the 994 delegates to the June 1980 AFM convention.[2]

Delegate voting at AFM conventions is conducted in three ways under the Constitution and AFM by-laws (the "by-laws"):

1. Voting for AFM officers and delegates to the national AFL–CIO convention is by secret ballot, with each local allotted up to 10 votes, depending on the size of its membership.

2. All other business is conducted by voice vote of all delegates, subject to the roll call provision next described.

3. Upon demand of 30 individual delegates or 15 locals, a roll call vote is conducted on proposed amendments to the Constitution or by-laws. In such voting each local casts as many votes as it has members.

Before the June 1980 convention AFM was experiencing financial difficulties, in large part attributable to the expense of conducting annual conventions.[3] Beginning in June 1979 AFM's International Executive Board (the "Board"), the 1979 convention finance committee and AFM's President considered various proposals to correct the problem.

In the spring of 1980 the Board's "Recommendation No. 1," drafted by the President, was "filed" for consideration at the June 1980 convention, and its text appeared in the May 1980 issue of AFM's membership newspaper. Before the opening of the convention the entire Board approved the draft with modifications. In its final form "Amended Recommendation No. 1" (the "amendment") called for a uniform work dues increase under which each member's dues would be increased by 1% of his or her scale wages.[4] Under the amendment each local in whose jurisdiction such wages are earned collects the entire amount, retains one-half for itself and distributes one-half to AFM. Any local may petition the Board for a waiver of the increase.

On June 17, 1980 the amendment was "put to a vote" on the floor of the convention. It was adopted by a voice vote, no demand for a roll call having been made. Consequently CFM members are now required to pay dues equal to 3% (rather than 2%) of their scale wages. About 40 other locals have successfully petitioned the Board to waive the increase as to their members.

### Plaintiffs' Claims

Complaint Count I asserts that AFM's delegate selection method and its vote on the amendment violate Section 101(a)(1). Count II claims that the vote and the imposition of the dues increase violate Section 101(a)(3)(A). Count III charges that those actions violate Section 101(a)(3)(B) as well.

1. *Section 101(a)(1)*

Section 101(a)(1) states:

---

**2.** Thus CFM delegate representation is only about 10% of what it would be on a one-member one-vote basis.

**3.** By recent amendment to the Constitution that convention now convenes on a biennial rather than an annual basis.

**4.** "Scale wages" are the minimum amounts AFM members must receive under prevailing contracts or union-drafted area standard wage lists.

*Equal rights.*—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

Plaintiffs claim that AFM's delegate selection procedure, under which locals with more than 600 members each are represented by only 37% of the delegates though they include 67% of AFM's total membership, violates Section 101(a)(1). Accordingly, plaintiffs reason, the dues increase is invalid because the delegate body that voted on that issue was selected in violation of that provision. In short plaintiffs claim Section 101(a)(1) requires that the one person-one vote principle be applied here.

AFM asserts two defenses:

First it contends that this Court lacks subject matter jurisdiction over plaintiffs' Count I claim. AFM's position is that challenges to the allocation of delegates come not within Section 101(a)(1) but within LMRDA Title IV, 29 U.S.C. §§ 481–82. But Title IV rights of action are granted only to the Secretary of Labor and not to private litigants such as plaintiffs.[5]

Alternatively AFM argues that even if this Court has subject matter jurisdiction over Count I, plaintiffs have failed to state a cause of action. If so Count I must be dismissed in any event.

As to the jurisdictional issue both sides rely primarily on *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), *Lux v. Blackman*, 546 F.2d 713 (7th Cir. 1973) and *Driscoll v. IUOE, Local 139*, 484 F.2d 682 (7th Cir. 1973). Defendants also seek to rely on the recent decision in *O'Doherty v. Brotherhood of Ry., Airline and Steamship Clerks, Freight Handlers, Express and Station Employees*, 618 F.2d 484 (8th Cir. 1980).

In *Calhoon* a union member claimed that the provision of his union's bylaws prohibiting any member from nominating anyone other than himself or herself for union office and restricting eligibility for office to persons who had been members of the national union for over five years violated Section 101(a)(1). Jurisdiction over that claim was found wanting by the Supreme Court (379 U.S. at 139–40, 85 S.Ct. at 295–96):

Plainly this [Section 101(a)(1)] is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote. And Congress carefully prescribed that even this right against discrimination is "subject to reasonable rules and regulations" by the union. The complaining union members here have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union granted to others. . . . It is true that they were denied their request to be candidates, but that denial was not a discrimination against their right to nominate, since the same qualifications were required equally of all members. . . . [P]ossible violations of Title IV of the Act . . . are not relevant in determining whether or not a district court has jurisdiction under § 102 of Title I of the Act.

In *Driscoll* our Court of Appeals invoked *Calhoon* to deny a District Court Section 102 jurisdiction to consider a union requirement that candidates for office execute a non-Communist affidavit. Title IV was held the only permissible line of attack on the provision. *Lux* similarly rejected jurisdiction over a suit challenging the validity of a provision barring union officership to anyone who had been a member of the Communist party during the past five years. Finally in *O'Doherty* the Court of Appeals for the Eighth Circuit held that the District Court lacked jurisdiction under Section 102 to consider a union member's com-

---

5. Under 29 U.S.C. § 412 a cause of action under LMRDA Title I, which includes Section 101, may be brought in the District Court in the first instance.

plaint as to the disproportionately low representation of his union in an intermediate governing body of the international organization.

What *Calhoon* teaches is that conduct that creates a cause of action under Title IV's eligibility requirements[6] cannot be used to bootstrap a Section 102 claim.[7] *Calhoon* also makes clear that Section 101(a)'s reference to "equal rights and privileges" will not be read broadly: Its mandate of equality will not be given the same content as in other contexts such as the one person-one vote cases or cases under Title VII of the Civil Rights Act of 1964. *Driscoll* and *Lux* are faithful progeny of *Calhoon* in both respects.

*O'Doherty* however is quite another matter. Dilution of a union member's voting power is plainly a violation of (using *Calhoon*'s language) the "command that members and classes of members shall not be discriminated against in their right to . . . vote." Again contrasting with and using the language from *Calhoon*, "The complaining union members here have [allegedly] been discriminated against . . . and have been denied [the equal] privilege or right to vote or nominate which the union granted to others." Thus plaintiff's claim in *O'Doherty*, viewed independently of any Title IV considerations, appeared to state a Section 102 cause of action. At the same time, because Title IV specifically governs intermediate union bodies (Section 401(d), 29

U.S.C. § 481(d)), it was viewed by the Eighth Circuit as affording the Secretary of Labor a remedy for the same conduct. Given that interplay and the "exclusive" language of Title IV, the *O'Doherty* analysis was to determine whether the "complaint raises an issue governed *predominantly* by Title IV . . . ." (618 F.2d at 486, emphasis added).[8] Based on the clear applicability of Section 401(d) the Court held that it did.

This Court is unable to reach the same conclusion here on the pleadings alone. Plaintiffs complain their voting rights *as to the dues increase* were unlawfully diluted by AFM's representation rules. Only the single sentence in Section 401(e) that "[e]ach member in good standing shall be entitled to one vote" might even conceivably bring that allegation within the Secretary of Labor's aegis under Title IV.[9] But even if it did, Section 101(a)(1) as interpreted in *Calhoon* "predominantly governs" (to use the *O'Doherty* phrase) the claim on the allegations of the Complaint.[10] Plaintiffs are not foreclosed as a matter of law from litigating Count I in this Court on jurisdictional grounds.

■ AFM also contends that even if this Court has subject matter jurisdiction over Count I, plaintiffs have failed to state a cause of action, relying on such cases as *Gordon v. Laborers' International Union of North America*, 490 F.2d 133, 137 (10th Cir. 1974). *Gordon* said that Section 101(a)(1) "was not intended to impose a proportional

---

**6.** See Appendix for provisions of 29 U.S.C. § 481(e) ("Section 401(e)").

**7.** As *Calhoon* stated, 379 U.S. at 139–40, 85 S.Ct. at 296:

> We hold that possible violations of Title IV of the Act regarding eligibility are not relevant in determining whether or not a district court has jurisdiction under § 102 of Title I of the Act.

**8.** Our Court of Appeals' decision in *Kempthorne v. United Transportation Union*, 457 F.2d 551 (7th Cir. 1972), dealt with an *O'Doherty*-type claim involving an intermediate governing body. It too relied on Section 401(d) and the exclusivity provision of Title IV. Though it engaged in no extended parsing of the provisions, its result is thus entirely consistent with the analysis in the text.

**9.** Such a contention would appear to be tenuous indeed, for Section 401(e) literally applies only to the election of union officers. Moreover plaintiffs assert no quarrel with the fact that each of them and each other AFM member has been afforded the opportunity to cast one vote in the selection of representatives. It is the claimed dilution of their representation, not the deprivation of *their* right to cast "one vote," of which plaintiffs complain.

**10.** AFM's argument that any applicability of Title IV would conclusively preclude the filing of a Section 102 action—in essence a preemption theory—must be rejected in light of the statement in *Calhoon* quoted in note 7 of this opinion.

representation system on international unions or their intermediate bodies." However that language (and like language in other cases on which AFM seeks to rely) does not compel the result—again as a matter of law—that AFM's representation pattern as applied to this case complies with Section 101(a)(1).[11]

■ Section 101(a)(1)'s text points to the relevant inquiry for this Court: "Every member ... shall have equal rights ... subject to reasonable rules and regulations in such organization's constitution and by-laws." In short the question is whether AFM's representation scheme is, for Section 101(a)(1) purposes, "reasonable." That is a factual question for which the present record provides no clear answer. Under the familiar teaching of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) the fact that plaintiffs might prove facts "in support of [their] ... claim which would entitle [them] ... to relief" precludes dismissal of Count I.[12]

2. *Section 101(a)(3)(A)*

■ Section 101(a)(3)(A) provides:

*Dues, initiation fees, and assessments.*— Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—

(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot. . . .

Plaintiffs argue that because one half of the dues increase is to be retained by the AFM locals (including CFM) that portion constitutes an increase "levied ... in the case of a local labor organization," which must be subject to the membership approval requirements of Section 101(a)(3)(A). AFM's voice vote approving the increase obviously did not comply with those requirements. Therefore, plaintiffs reason, collection of the dues increase is impermissible to the extent retained by AFM locals.

AFM maintains that *Ranes v. Office Employees International Union, Local No. 28*, 317 F.2d 915 (7th Cir. 1963) holds Section 101(a)(3)(A) requirements inapplicable to *any* dues increase enacted by an international union, regardless of what organization receives the proceeds. It contends that Section 101(a)(3)(A) thus has no bearing on

---

**11.** It is perhaps the height of irony that Gordon's language was predicated on the Supreme Court decision in *AFM v. Wittstein*, 379 U.S. 171, 85 S.Ct. 300, 13 L.Ed.2d 214 (1964), a decision on which AFM also attempts to rely in this case. Yet in *Wittstein* AFM was successful in *upholding*, as conforming to Section 101, a dues increase approved by the very system of weighted voting that plaintiffs seek to invoke and AFM *resists* vigorously in the present case. AFM's attempt to advance *Wittstein* to support its position here is reminiscent of Cornwallis' surrender at Yorktown, which was accompanied by a military band playing "The World Turned Upside Down."

**12.** Plaintiffs also assert that Section 101(a)(1) was violated because the dues increase was passed by a voice vote. Specifically they claim that (1) non-delegates located in the gallery participated in the vote without their expressions being discounted (Complaint Paragraph 16) and (2) the use of the voice vote impermis-

sibly "shield[ed] the knowledge of how each local's delegates voted" (Complaint Paragraph 19).

Plaintiffs cite no authority, and this Court has found none in its own research, in support of the proposition that those events give rise to a cause of action under Section 101(a)(1). Moreover the affidavit of Robert Crothers submitted with AFM's reply memorandum refutes the factual contention that non-delegates participated in the voice vote. Plaintiffs based their allegation of such participation on a passage from The *International Musician*, AFM's membership magazine. That passage neither refers to the dues increase vote nor constitutes competent evidence. Consequently the Crothers affidavit stands uncontradicted, and even if plaintiffs' allegation did state a Section 101(a)(1) cause of action that affidavit would justify summary judgment in AFM's favor on that issue.

the propriety of the dues increase here, which was in fact passed by AFM.

In *Ranes* an international union convention had voted to impose an increase in the minimum dues collectible by its affiliated local unions. Plaintiffs were members of a local that had then increased its dues to the new minimum level by a simple notice to its membership. They claimed that because of total noncompliance with Section 101(a)(3)(A) procedures the increase was invalid. In response the international countered that though the increase was collected by the local union the fact that it was approved by the international rendered Section 101(a)(3)(A) inapplicable—the same argument advanced by AFM here. Our Court of Appeals held in favor of the international.

*Ranes* is indeed dispositive on AFM's motion to dismiss Count II.[13] Although read in a vacuum (that is, without Subsection (B) in the statute) Section 101(a)(3)(A) would support plaintiffs' position, this Court does not write on a clean slate and cannot accept plaintiffs' invitation effectively to overrule its direct superior in the federal court structure.

3. *Section 101(a)(3)(B)*

■ Section 101(a)(3)(B) reads:

... rates of dues and initiation fees payable by members of any labor organization ... shall not be increased, and no general or special assessment shall be levied upon such members, except—

... (B) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: *Provided,* That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization.

Count III asserts that the majority vote of delegates approving the dues increase was invalid because AFM failed to comply with the Section 101(a)(3)(B)(i) requirement that such a vote be preceded by at least 30 days' "written notice to the principal office of each local" of the matters to be voted on.

That contention may be dismissed in short order. AFM's June 1980 convention was (as plaintiffs concede) a "regular convention." Plainly the 30-day notice requirement of Section 101(a)(3)(B)(i) applies only to dues increases voted upon at a *special* convention. Both the doctrine *reddendo singula singulis*[14] and the legislative history set out in AFM's supporting memorandum compel that conclusion.

Count III thus relies wholly on plaintiffs' misreading of Section 101(a)(3)(B)(i). Because that provision affords plaintiffs no relief Count III must be dismissed.[15]

---

**13.** Plaintiffs misread part of the *Ranes* opinion, 317 F.2d at 918, as limiting its holding to an international's imposition of per capita taxes rather than dues. On the contrary, it was the unsuccessful *plaintiffs* in *Ranes* who had sought to make that distinction, urging that the way to reconcile Sections 101(a)(3)(A) and (B) was to make the former applicable to all dues increases and to limit the latter to increases in per capita taxes. Our Court of Appeals rejected that argument, holding that Congress must have known its business when it used the term

"rates of dues ... payable by members" to apply to *both* subsections.

**14.** See 2A Sutherland, Statutory Construction § 47.26 (1973) and *United States v. Pritchett,* 470 F.2d 455 (D.C.Cir.1972).

**15.** Even if Section 101(a)(3)(B)(i) applied to "regular conventions" plaintiffs might very well still be without recourse under that provision. AFM asserts that it formally advised each of its locals of the June, 1980 convention well in advance of 30 days prior to the conven-

## Conclusion

AFM's motion to dismiss the Complaint is granted as to Counts II and III and denied as to Count I. All defendants are hereby ordered to answer Count I of the Complaint on or before June 30, 1981.[16]

## APPENDIX

(e) In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address. Each member in good standing shall be entitled to one vote. No member whose dues have been withheld by his employer for payment to such organization pursuant to his voluntary authorization provided for in a collective bargaining agreement shall be declared ineligible to vote or be a candidate for office in such organization by reason of alleged delay or default in the payment of dues. The votes cast by members of each local labor organization shall be counted, and the results published, separately. The election officials designated in the constitution and bylaws or the secretary, if no other official is designated, shall preserve for one year the ballots and all other records pertaining to the election. The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not in-

consistent with the provisions of this subchapter.

tion. Although AFM has not specified the nature of that notice it does maintain the notice complied with Section 101(a)(3)(B)(i) requirements. This Court of course has no reason to consider that contention now.

16. Defendant CFM's parallel motion had been stayed pending this Court's ruling on AFM's motion. Because the underlying legal principles are the same, this opinion applies with equal force to dispose of CFM's motion.