568 F.Supp. 1246 (1983)
Emil PARINI, Plaintiff,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL 179, Defendant.
No. 83 C 2073.
United States District Court N.D. Illinois, E.D.
July 27, 1983.
*1247 Theodore J. Bednarek, Troha, Troha & Bednarek, Joliet, Ill., for plaintiff.
Roger N. Gold and Anita Tanay, Chicago, Ill., for defendant.

MEMORANDUM OPINION AND ORDER
SHADUR, District Judge.
Emil Parini ("Parini") sues International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 179 ("Union"), contending he was wrongfully discharged from his position as a Union business agent. His Complaint arguably draws on several jurisdictional predicates: Sections 102, 401, 501 and 609 of the Labor-Management Reporting and Disclosure Act of 1959 (the "Act"), 29 U.S.C. §§ 412, 481, 501 and 529,[1] and 28 U.S.C. § 1331.
Union has moved under Fed.R.Civ.P. ("Rule") 12(b)(1) and (6) to dismiss this action for want of subject matter jurisdiction. For the reasons stated in this memorandum opinion and order Union's motion is granted.

Complaint Allegations[2]
Union is an Illinois-based labor organization representing Illinois employees. Also residing in Illinois, Parini is a Union member and was employed by it as a business agent from June 1976 until January 1982. In October 1975 Parini decided to run for Union office. Attempting to dissuade him, certain Union officials promised to appoint him as a business agent until the next election if he did not run in the current election.[3] Parini agreed. In consideration for his thus deferring pursuit of his political aspirations, elected Union officials selected him as one of Union's business agents effective June 1976. From that time until August 1981 two other elections were held. Each time Parini opted not to become a candidate because certain Union officials had again promised (before each election) to retain him as a business agent (until the next election) so long as he did not run for office.
Union's next election was scheduled for October 1981. Before the September deadline for nominations, Parini informed certain Union officials of his intention to run for office in that election. Once again those officials made their conditional offer to renew his employment contract. Again Parini accepted, foregoing another opportunity to seek election.
Nonetheless, in January 1982 Parini was terminated and told he would be reappointed as soon as another business agent position became available. In September 1982 *1248 one of Union's business agents died. Though Parini had asked to be given that opening, Union appointed someone else to the post instead.
Parini asserts not only the loss of substantial wages he would have received as business agent since January 1982 but "injury to his reputation, humiliation, suffering and mental anguish." For all this he seeks reinstatement in his job plus damages:
(1) loss of wages, the claimed injuries and expenses including attorney's fees  for all this the nice round sum of $500,000 and
(2) another $500,000 in punitive damages.

Subject Matter Jurisdiction
Parini's attempt to invoke this Court's subject matter jurisdiction has three logical steps:
1. Union's breach of its agreement to retain Parini as a business agent offended certain of his rights under the Act by effectively depriving him of the opportunity to run for Union office:
(a) his equal voting rights and rights of speech and assembly under Sections 101(a)(1) and (2) (part of Title I of the Act), 29 U.S.C. § 411(a)(1) and (2);
(b) his right to be eligible for Union office under Section 401(e) (part of Title IV of the Act), 29 U.S.C. § 481(e);
(c) his rights under Section 501 (part of Title V of the Act), 29 U.S.C. § 501, which imposes certain fiduciary obligations on union officials; and
(d) his Section 609 right not to be disciplined for exercising other rights under the Act.
2. Union's asserted evasions of those rights are actionable under one or more of the three provisions that authorize private actions for violations of the Act:
(a) Section 102 confers a right on "[a]ny person whose rights secured by the provisions of this subchapter [Title I of the Act] have been infringed by any violation of this subchapter [to] bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate."
(b) Section 501(b) permits a union member to sue any union official who violated Section 501(a), provided the union itself has refused to bring suit.
(c) Section 609 recognizes private actions against unions or union representatives who "fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter [the Act]."
3. This Court has subject matter jurisdiction over those federal claims under Sections 102, 501(b) and 609 (which also serve as jurisdictional predicates) and 28 U.S.C. § 1331, the general federal question jurisdictional provision.
All three propositions are fatally flawed. But because the defects in the first one conclusively establish the absence of subject matter jurisdiction, it is unnecessary to focus on the shortcomings of the other two.[4]
At the outset it should be emphasized the claimed intrusions into Parini's rights under the Act rest on the same incorrect premise  that Parini was involuntarily deprived of his opportunity to run for Union office. But that is plainly not the case. Parini's Complaint leaves no doubt he willingly ("eagerly" might be more accurate) relinquished his opportunity to be a candidate time and time again in return for valuable consideration  renewal of his Union employment. That decision is no less voluntary because (as must be assumed at this threshold pleading stage) Union officials did not intend to keep their last promise of employment. Such duplicity is irrelevant, for Union's culpability for the "deprivation" of Parini's rights stemmed from the very nature of the offer: its precondition that Parini not proclaim his candidacy.
*1249 In short, only Union's making of that contingent offer  not the presence or absence of its underlying good faith in doing so  could possibly have implicated the Act.[5] And Parini is really not objecting to that aspect of Union's conduct at all. Instead the very purpose of this action is to extract the benefit of the bargain he made. Far from suing because of his non-candidacy, Parini wants to recover the lost benefits of the job he voluntarily took in exchange for not running for office. Thus there is no way he can be said to be invoking the provisions of the Act as the basis for his suit.
That alone destroys any claimed federal jurisdictional predicate for this action. But there is more. Even were it assumed Union had deprived Parini of his opportunity to run for election, such deprivation would not impinge upon his asserted rights under the Act:
1. Section 101(a)(1) guarantees Parini "equal rights and privileges within [a labor] organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings...." Those rights were scarcely infringed by precluding Parini from being a candidate, see Denov v. Chicago Federation of Musicians, 703 F.2d 1034, 1037 (7th Cir.1983).
2. Section 101(a)(2) affords Parini "the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings...." Again Parini's inability to seek election did not hamper those rights, for he could freely attend any campaign meeting or express his views on any particular candidate.
3. Section 401(e) provides, "Every member in good standing [like Parini] shall be eligible to be a candidate and to hold office ... and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof." Even if Parini could establish the highly doubtful proposition that the positive inducement of renewing his employment contract came within the prohibition of the underlined clause, he would have no private right of action for that claim. Denov, 703 F.2d at 1037.[6]

*1250 4. Section 501 imposes general fiduciary responsibilities upon union officials. It specifically requires those officials to manage union assets solely for the union's benefit (in accordance with the union's constitution and bylaws) and forbids them from dealing with the union in any manner in which they have an adverse interest. This Court fails to perceive (and Parini fails to identify) any connection between such fiduciary obligations and Union's conduct at issue here. Parini's employment relationship with the Union is simply not affected by Section 501(a) fiduciary standards.
5. Neither Union's conditional offer of employment nor its dismissal of Parini violates Section 609, even assuming the Act gives Union members the privately enforceable right to run for Union office. As for Parini's discharge, there is no allegation it was predicated on Parini's exercise of any right under the Act. Hence that aspect of Union's conduct does not implicate Section 609 at all. As for Union's conditional offer, that did not entail "discipline" within the meaning of Section 609 for two reasons:
(a) Union's offer of renewed employment was beneficial and not punitive from Parini's perspective.
(b) Even were that offer punitive, it still would not constitute "discipline." Finnegan, 456 U.S. at 437-38, 102 S.Ct. at 1871 (footnotes and citations omitted; emphasis in original) is dispositive on that score:
[W]e conclude that the term "discipline," as used in Section 609, refers only to retaliatory actions that affect a union member's rights or status as a member of the union. Section 609 speaks in terms of disciplining "members"; and the three disciplinary sanctions specifically enumerated  fine, suspension, and expulsion  are all punitive actions taken against union members as members. In contrast, discharge from union employment does not impinge upon the incidents of union membership, and affects union members only to the extent that they happen also to be union employees.... We discern nothing in § 609, or its legislative history, to support petitioners' claim that Congress intended to establish a system of job security or tenure for appointed union employees.
In sum, from at least two separately dispositive perspectives the Complaint's allegations as to Union's bad faith and breach of contract are not actionable under the Act (though Parini may very well have a claim under state law). Consequently this Court must dismiss this action for want of subject matter jurisdiction.

Conclusion
Union's motion is granted. This action is dismissed for want of subject matter jurisdiction.
NOTES
[1] Citations to the Act will refer to its section numbers (e.g., "Section 102") rather than to the section numbering in Title 29. Parini mentioned Section 401 and invoked Section 609 as a jurisdictional base in his memorandum, though not in the Complaint itself. He did not rely on the jurisdictional provision in Section 501(b) at either point.
[2] As will be explained in greater detail, Union's motion has three analytical components:

1 and 2. Parini's Complaint does not state (1) a violation of the Act (2) for which there is a private right of action.
3. Both the Act's jurisdictional provisions and 28 U.S.C. § 1331  the Complaint's only conceivable jurisdictional underpinnings  are inapplicable.
Because the first proposition  the crux of the motion  is really a Rule 12(b)(6) type of argument, this Court has treated that aspect of the motion under Rule 12(b)(6) standards. It has therefore accepted as true the Complaint allegations, together with reasonable inferences favorable to Parini.
[3] Parini does not expressly indicate the duration of that oral employment contract. However, given the consideration for that promise of employment (the foregoing of Parini's candidacy in that particular election), the reasonable inference is that the alleged employment guaranty would expire at the next election. That inference is reinforced  really validated entirely  by Parini's failure to controvert it (either in the Complaint or his brief).
[4] This is a slight overstatement. Once it is demonstrated (as the text proceeds to do) there is no subject matter jurisdiction under the Act, general federal question jurisdiction is lacking under 28 U.S.C. § 1331 as well. To that extent Parini's third proposition is inherently implicated too.
[5] Finnegan v. Leu, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982) strongly suggests such an offer does not contravene the Act. That case held a union president could, without running afoul of union employees' Title I membership rights, discharge employees who actively supported the president's opponent in an election. Finnegan reasoned such retaliatory conduct did not prevent those individuals from exercising their membership rights but instead merely forced them to "choos[e] between the right of free expression ... and their jobs" (456 U.S. at 440, 102 S.Ct. at 1873, quoting Retail Clerks Union Local 648 v. Retail Clerks International Ass'n, 299 F.Supp. 1012, 1021 (D.D.C.1969))  a permissible "indirect interference with their membership rights" (id.). That logic would appear to validate Union's conditional offer of employment to Parini (even assuming for the moment Parini's rights under the Act were implicated). That offer did not preclude Parini from exercising his rights under the Act; it merely put Parini to a similar choice. In fact the options available to Parini were far less a Hobson's choice than those in Finnegan. Nor does the offer to Parini fall within the possible exception (in the Title I context) acknowledged in Finnegan (456 U.S. at 441, 102 S.Ct. at 1873, quoting Schonfeld v. Penza, 477 F.2d 899, 904 (2d Cir.1973)): where the "dismissal from union office [is] `part of a purposeful and deliberate attempt ... to suppress dissent within the union....'" As Penza (477 F.2d at 903) makes clear, the "attempt ... to suppress dissent" must be a "form of intimidation" directed against a particular faction in the union. And nothing in the Complaint even hints Union's effort to discourage Parini from running was part of a broader scheme to squelch any particular Union group or viewpoint. Indeed, the wholly non-punitive nature of Union's offer precludes such an inference.
[6] Under Section 402 Union members aggrieved by Section 401 violations must file a complaint with the Secretary of Labor, who may then bring an action to set aside an invalid election or remove the elected officials. Thus not only is there no private right of action for Section 401(e) violations but the relief sought by Parini  back pay and reinstatement  are unavailable even to the Secretary of Labor.