Dorothy RANES et al., Plaintiffs-Appellants,

v.

OFFICE EMPLOYEES INTERNATIONAL UNION, LOCAL NO. 28, Defendant-Appellee.

No. 14056.

United States Court of Appeals Seventh Circuit.

May 15, 1963.

John A. Cook, Cook & Lavery, Chicago, Ill., for plaintiffs-appellants.

Joseph E. Finley, Cleveland, Ohio, for defendant-appellee.

Before DUFFY and KNOCH, Circuit Judges, and MERCER, District Judge.

MERCER, District Judge.

The plaintiffs appeal from an order of the court below granting the motion

of defendant, Local 28, for a summary judgment. There is no dispute as to the facts. The single issue presented is a simple one which affords a basis for controversy principally because the statute from which it arises has not been definitively interpreted by any court of appellate jurisdiction.

Local 28 is affiliated with Office Employees International Union, AFL–CIO, hereinafter referred to as OEIU. Prior to October 1, 1962, it charged each of its members dues of $2.00 per month. That dues figure was fixed to coincide with the minimum dues requirement fixed by the constitution of OEIU.[1] At the regular convention of OEIU, held in June, 1962, the constitution of OEIU was amended to provide that, effective October 1, 1962, the membership dues to be collected by each of OEIU's affiliated locals should be not less than $3.00 and not more than $6.00 per month. Thereafter, the officers of Local 28 advised its members that dues payable to the Local would be increased to $3.00 per month effective on and after October 1, 1962. The question of such increase in dues was not submitted to a referendum of the members of Local 28.

Plaintiffs then filed this action for declaratory and injunctive relief, upon the theory that Local 28 could not increase the monthly dues charged to its members, without first presenting the question to its membership by referendum in accordance with the provisions of Section 101(a) (3) (A) of the Labor-Management Reporting and Disclosure Act of 1959. 29 U.S.C. § 411(a) (3) (A). Upon cross motions for summary judgment, the court below concluded that the action of OEIU increasing the minimum dues to be charged by its affiliated local unions was a valid act authorized by the provisions of 29 U.S.C. § 411(a) (3) (B), which was binding upon plaintiffs and all other members of OEIU. In accordance with that conclusion, the court denied plaintiffs' motion for sum-

mary judgment and granted summary judgment in favor of Local 28.

Section 101(a) (3) of the Labor-Management Reporting and Disclosure Act of 1959 provides:

"Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—

"(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or

"(B) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: *Provided,* That such action on the part of the executive board or similar governing body shall be effective only until the next

1. Art. XVIII, § 8.

regular convention of such labor organization." 29 U.S.C. § 411(a) (3).

The only issue presented is whether the action of an international union pursuant to Section 101(a) (3) (B) of the Act increasing the constitutional minimum for dues payable by its members to their respective local unions can be enforced by an affiliated local union without first submitting the question of a dues increase to a vote of its members under the provisions of Section 101(a) (3) (A) of the Act.[2]

We are aware of only one previous decision interpreting Section 101(a) (3). In that case the court held, consistently with the decision below, that an international union has the authority under 101 (a) (3) (B) to enact an across-the-board increase in dues to be paid by its members to its affiliated local unions and to bind its local unions by that action without submitting the question of the dues increase to a referendum of the locals' members. International Brotherhood of Teamsters, Etc. v. Bakery Sales Drivers Local No. 33, et al., D.D.C., October 27, 1961.

We agree with that interpretation of Section 101(a) (3). That subsection relates, in its entirety, to "*the rates of dues* and initiation fees *payable by members* of" labor organizations. It provides that rates of dues in effect on September 14, 1959, may not be increased except by the methods therein prescribed. The method prescribed for increases in dues by a local union is a majority vote of its members. On the other hand, subsection (B) prescribes alternative methods by which an international union may increase "rates of dues", which include the submission of the question to the delegates at its convention.

The legislative history of the Act is silent on this question, but we think it clear that 101(a) (3) embodies congressional recognition of the existence of a sphere of interest in both international and local unions in the area of membership dues. Traditionally, international unions have exercised primary jurisdiction over affairs of their affiliated local unions, including the control of the local dues structure sufficient to insure the financial health of the union structure. Many international unions exercise control in the latter sphere of interest by the device of prescribing the minimum rate for the dues which each of their locals shall collect from its members.[3] We cannot assume that Congress was unaware of the traditional structure and dues practices of labor unions when it enacted 101(a) (3), or that Congress, being aware of the traditional structure and practices, intended by enacting that Section to strip international unions of their traditional power to control the minima and maxima of rates of dues without one word in the Committee Reports expressing that intention.[4] On the

**2.** Plaintiffs do not contest the trial court's conclusion that the action taken by OEIU at its regular convention was valid and authorized by the provisions of subsection 101(a) (3) (B) of the Act.

**3.** "National Unions generally exercise some jurisdiction over the amount of dues to be charged by their affiliated locals. A fixed amount, or maximum or minimum limits, or both, may be prescribed. * * *" Bur.Lab.Stat.Bull. No. 1225, c. 1:04, p. 6.

"International constitutions generally set minimum dues standards, particularly where the per capita tax is specified. This places an effective 'floor' under local dues. Since dues expressed as minimum amounts are most prevalent by far in the international union constitutions surveyed, a general statement here on exact dues is precluded. Such minima are found particularly among AFL unions. Over 85 percent of AFL membership * * * and nearly half of the CIO unions * * * in the survey have prescribed dues minima; this principle also applies to the bulk of independent union membership." "Financing of Union Activities" (Serial No. R2088, U. S. Dept. of Labor, Bur. of Lab. Stat.), Monthly Labor Review, October, 1952.

**4.** See, S.R. 187, 86 Cong., 1st Sess., 1959 U.S.Code Cong. & Adm.News, p. 2318 et seq.; H.R. 741, 86 Cong., 1st Sess.,

contrary, we must assume that Congress was aware of the established structure and practices and interpret the statute in the light thereof. Cf., Perrine v. Chesapeake & D. Canal Co., 9 How. 172, 50 U.S. 172, 187–188, 13 L.Ed. 92; Local 1976, Etc. v. N. L. R. B., 357 U.S. 93, 98–101, 78 S.Ct. 1011, 2 L.Ed.2d 1186.

When Congress provided methods for increasing "rates of dues" in subsection (B) we think it intended what the plain language of the statute says. We, accordingly, reject plaintiffs' argument that that subsection should be interpreted to apply to per capita taxes.[5] We should be reluctant to attribute to Congress either a lack of knowledge of the distinction between "dues" and "per capita taxes" in labor-union parlance or the lack of the ability to articulate its intent.

■■ The protection of the rights of union members is the purpose of 101(a) (3). Unless the provisions of subsection (B) are meaningless, Congress has said that that purpose is served when union members have representation at the council table where dues structures are changed.[6]

■ These plaintiffs have received that protection. Prior to the enactment of 101(a) (3), the constitution of OEIU contained a provision fixing the minimum rate of dues which each of its affiliated locals would charge. At a duly constituted convention, at which Local 28 was represented by a delegation elected by its members, that constitutional provision was amended to increase the minimum rate. Plaintiffs do not challenge the validity of that amendment. What they do contend is that the valid act of OEIU increasing the minimum rate cannot bind Local 28 and its members unless the question of increasing dues consistently therewith is submitted to a vote of the members of the Local. In short, they assert the right under 101(a) (3) (B) to veto the International's lawful act. The contention is wholly illogical. OEIU has acted lawfully within a traditional sphere of its power to control its affiliated local unions. The officers of Local 28 have recognized the controlling effect of, and have implemented OEIU's act by increasing the rate of its dues to conform therewith.[7] The intendment of the statute has been satisfied.

The judgment is affirmed.

1959 U.S.Code Cong. & Adm.News, p. 2424 et seq.; Conf.R., 86 Cong., 1st Sess., 1959 U.S.Code Cong. & Adm.News, p. 2503 et seq.

5. The charge per member payable periodically, usually monthly, by a local union to the national or international union with which it is affiliated. The per capita tax is a charge against the local union, not its members, collected by the parent union in lieu of a dues assessment.

6. We do not, as plaintiffs argue, sterilize the provisions of subsection (A) by placing a logical interpretation upon the provisions of subsection (B). The provisions of (A) govern the dues structure of independent company and unaffiliated local unions, and should apply, as well, to increases in the dues charged by affiliated locals above the constitutional minima prescribed by their parent unions.

7. The organization of OEIU follows the traditional labor-union pattern. The International Union is superimposed as a central governing body over its chartered locals. Its constitution is the paramount document of government, a fact recognized in Article XXIV of the Constitution of Local 28 in the provision that "any provision contained herein which is contrary to or in conflict with the provisions of the International Union Constitution shall be inoperative and of no effect." The international convention is the governing body of the whole structure, and it is declared to be "the legitimate source of all authority and the final court of appeal" for all intra-union questions. OEIU Const., Art. V, § 1. All members of each chartered local are also members of OEIU, who are represented at its conventions by delegates elected to represent their respective local unions.