906 F.2d 510
 134 L.R.R.M. (BNA) 2703, 115 Lab.Cas. P 10,134
 John PATTERSON; Henry Fuoss; Donna Grattan; Walter D.
Losey; Richard Luna; Carpenters Local Union # 55;
Carpenters Local Union # 244; Carpenters Local Union #
1396, Plaintiffs-Appellees-Cross-Appellants,
v.
UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA
AFL-CIO, Defendant-Appellant-Cross-Appellee.
 Nos. 89-1218, 89-1305.
 United States Court of Appeals,
Tenth Circuit.
 June 27, 1990.
 
 Barry D. Roseman, Denver, Colo., for plaintiffs-appellees-cross-appellants.
 Lawrence Gold, Washington, D.C., and Rita Byrnes Kittle (Donald P. MacDonald with her on the brief) of Hornbein, MacDonald, Fattor and Hobbs P.C., Denver, Colo., for defendant-appellant-cross-appellee.
 Before TACHA and SETH, Circuit Judges, and BROWN,* District Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant-cross-appellee United Brotherhood of Carpenters and Joiners of America (UBC) appeals from a grant of summary judgment against it in an action brought by plainitffs-appellees-cross-appellants unions and union members under the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. Secs. 401-531 (1982), to enjoin a dues and per capita tax increase levied by the UBC on seven Colorado Carpenters local unions. Plaintiffs cross-appeal the district court's denial of their request for attorneys' fees. We affirm the district court on both appeals.
 
 Background
 
 2
 Plaintiffs are three local unions and members of these local unions that are affiliated with the UBC. Plaintiff unions are also affiliated with the Colorado Centennial District Council of Carpenters (District Council), an intermediate labor organization within the UBC hierarchy. The District Council is governed by delegates elected by members of the seven Colorado Carpenters local unions.
 
 
 3
 The record indicates that the events giving rise to this action began in July 1987 when the delegates to the District Council voted to hold a mail referendum on a proposal to establish minimum basic dues for local union members and to increase each member's working assessment to the District Council. The intent of this proposal was to raise additional revenue that would enable the District Council to assume responsibility for the activities and expenses of the local unions' business representatives. The members of the District Council's affiliated unions voted down this proposal.
 
 
 4
 Six months later, apparently at the urging of the UBC, the District Council submitted a second, similar revenue-raising proposal to its members. Again, the union members rejected the proposal, this time by a larger margin.
 
 
 5
 In April 1988, the UBC became directly involved in the District Council revenue issue when its General Executive Board (UBC Board) voted to require the members of the Colorado Carpenters local unions to hold a third vote on proposals designed to increase the District Council's operating revenue. This vote required the members to chose between two "revenue options," but without an option to reject both proposals. The first proposal, Option A, increased both the union members' working dues to the District Council and the per capita tax owed to the District Council by five of the seven local unions. Option B left working dues unchanged, but increased the local unions' per capita taxes by as much as sixfold. According to affidavits submitted by plaintiffs, both of these revenue-generating proposals would have significantly increased the amount paid by each Colorado union member in dues and assessments.
 
 
 6
 The UBC Board action created a considerable controversy among the members of the District Council, prompting both the District Council president and its delegates to urge the Board to revoke its decisions to require a third vote on the now mandatory revenue-raising "options." At the same time, local union members circulated a petition protesting the Board's decision. The UBC did not respond to these actions, and in a September 1988 mail ballot vote, a majority of the Colorado local union members chose Option A over Option B.
 
 
 7
 On October 28, 1988, the plaintiffs filed the instant action in the United States District Court for the District of Colorado. In that action, plaintiffs alleged that the UBC's actions with respect to the September 1988 vote and dues increase had violated local union members' rights under LMRDA Sec. 101(a)(3), 29 U.S.C. Sec. 411(a)(3), to participate in and vote, individually or through elected delegates, on increases in their union dues. On the parties' cross-motions for summary judgment, the district court entered summary judgment for plaintiffs and enjoined the dues increase approved in the September 1988 vote. Upon the court's denial of plaintiffs' subsequent request for attorneys' fees, these appeals followed.
 
 Analysis
 A. Application of LMRDA Section 101(a)(3)
 
 8
 Section 101(a) of LMRDA is part of the "Bill of Rights of Members of Labor Organizations" enacted by Congress to protect democratic processes in union organizations. See United Bhd. of Carpenters & Joiners v. Brown, 343 F.2d 872, 882-83 (10th Cir.1965). Subsection 3 of this provision establishes the right of individual union members to participate in and vote, either directly or through representatives, on union decisions regarding dues and equivalent issues. Id. In particular, the subsection provides as relevant to this case:
 
 
 9
 (3) Dues, initiation fees, and assessments
 
 
 10
 Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except--
 
 
 11
 ....
 
 
 12
 (B) in the case of labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: Provided, That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization.
 
 
 13
 29 U.S.C. Sec. 411(a)(3).
 
 
 14
 The district court found that the UBC's attempted imposition of the dues increase voted upon by the Colorado local union members violated this provision because (1) these members did not have an opportunity to reject a dues increase as required to comply with LMRDA Sec. 101(a)(3)(B)(ii) and (2) the UBC Board lacked authority under section 101(a)(3)(B)(iii) to single out members of the District Council for a dues increase. Memorandum and Order at 2-5 (June 16, 1988). The UBC challenges both of these determinations and the court's consequent conclusion that the Option A dues increase was prohibited by the LMRDA.
 
 
 15
 1. Sufficiency of the local union vote in favor of Option A
 
 
 16
 The UBC first contends that the Colorado union members approved the contested dues increase as required by LMRDA Sec. 101(a)(3)(B)(ii) because the vote in which they chose Option A as their "revenue option" provided them with the opportunity to reject the dues increase included in Option A in favor of the per capita tax increase proposed in Option B. An increase in the per capita tax paid by a local union is not, they argue, an increase in the "rates of dues ... payable by" union members and hence is not subject to the voting requirements of LMRDA Sec. 101(a)(3)(B)(ii). See Seybert v. Lowen, 623 F.2d 780, 784 & n. 8 (2d Cir.1980); Ranes v. Office Employees Int'l Union, Local No. 28, 317 F.2d 915, 918 (7th Cir.1963). Accordingly, the UBC asserts, the September 1988 vote did present union members with a choice between a dues increase and no dues increase and their vote in favor of Option A was therefore sufficient under the statute.
 
 
 17
 The district court rejected this argument on the ground that Option B's proposed increase in the local union per capita taxes was, in fact, a dues increase subject to section 101(a)(3)(B)'s democratic requirements because it would have imposed additional financial burdens on individual union members. Memorandum and Order at 2. We agree. Under the "financial burden test" first enunciated in King v. Randazzo, 234 F.Supp. 388 (E.D.N.Y.1964), aff'd, 346 F.2d 307 (2d Cir.1965), and approved by every court that has since considered the issue, "[w]hether there has been an increase in dues must be determined not by who imposed the exaction but by the nature of the imposition and its direct effect upon the financial burden of the individual members." Id. at 394; see Seybert, 623 F.2d at 784; Local No. 2, Int'l Bhd. of Tel. Workers v. Int'l Bhd. of Tel. Workers, 362 F.2d 891, 894-95 (1st Cir.), cert. denied, 385 U.S. 947, 87 S.Ct. 321, 17 L.Ed.2d 226 (1966). In this case, plaintiffs presented undisputed evidence that the up to sixfold per capita tax increase proposed in Option B would require the local unions to increase their dues in order to remain solvent, thus imposing a direct financial burden on individual union members. Under these circumstances, Option B proposed a thinly disguised dues increase rather than a true per capita tax and was not an alternative to the dues increase proposed in Option A. See Seybert, 623 F.2d at 785 n. 11 (recognizing that a per capita tax increase could be deemed an increase in the "rate of dues" under LMRDA Sec. 101(a)(3) when an international union seeks to impose such an onerous per capita tax increase that the members of its subordinate locals would be coerced into increasing their own local membership dues so as to preserve the financial integrity of their locals). Accordingly, we affirm the district court's holding that the September 1988 union member vote in favor of Option A did not satisfy the requirements of LMRDA Sec. 101(a)(3).
 
 2. Sufficiency of UBC Board approval
 
 18
 The UBC next argues that the dues increase proposed in Option A was permissible under LMRDA Sec. 101(a)(3)(B) because it was previously approved by the UBC Board. See 29 U.S.C. Sec. 411(a)(3)(B)(iii). In support of this argument, the UBC relies principally on the Ninth Circuit's decision in Mori v. International Brotherhood of Boilermakers, 653 F.2d 1279 (9th Cir.1981).[1]
 
 
 19
 In Mori, the Ninth Circuit considered whether LMRDA Sec. 101(a)(3)(B) permitted the convention of an international union to establish minimum local union dues for members of a single craft within its affiliated local unions. Id. at 1280. The court held that this action was authorized by section 101(a)(3)(B)(i), which permits an international labor organization to raise dues by majority vote of the delegates voting at a regular convention of the labor organization. See 29 U.S.C. Sec. 411(a)(3)(B)(i). In reaching this conclusion, the court found that section 101(a)(3) was not intended to displace an international union's traditional authority to set dues payable by its members to their local unions, Mori, 653 F.2d at 1283-84; see Ranes, 317 F.2d at 917-18, but also recognized that this authority was not unlimited and that Congress had intended it to be exercised in a democratic manner that protects union members from arbitrary, exploitative or discriminatory action by the international union. See Mori, 653 F.2d at 1284-85.
 
 
 20
 Our concern in this case is whether the procedures followed by the UBC adequately protected the Colorado union members' democratic rights as required by LMRDA Sec. 101(a)(3)(B). While this standard is generally met when an international union raises dues across-the-board for all of its affiliated union members, see Ranes, 317 F.2d at 917; White v. Local No. 207 of Laborer's Int'l Union, 387 F.Supp. 53, 56 (W.D.La.1974), an attempt by an international union to impose increased dues on only a minority of its membership requires more careful scrutiny. See White, 387 F.Supp. at 56. In Mori, which concerned just such a dues increase for a minority of the international union's overall membership, the Ninth Circuit concluded that Congress' concern for democratic processes had been satisfied because the minority union members had had delegates present and active at the union convention that approved the challenged dues increase, the evidence established that many of these affected members supported the selective dues increase and there was no other reason in the record "to distrust the democratic process at work at the convention." Mori, 653 F.2d at 1284-85. The undisputed facts in this case, however, are significantly different. Here, the UBC sought to impose a dues increase on a minority of its membership that had repeatedly rejected just such an increase through democratic votes conducted by its governing labor organization, the District Council. The UBC body seeking to overturn this result, the UBC Board, included no representatives from the District Council or the Colorado local unions. Instead, it was composed of fifteen members, all of whom were either UBC officers or district representatives elected at the UBC's convention by vote of all of the delegates. The Board member deemed to represent UBC's Colorado union members was in fact a member of a Nebraska local union. Under these circumstances, it cannot be said that the individual members of the Colorado Carpenters unions were allowed to participate in the UBC Board's decision to increase their dues in the manner required by Congress in LMRDA Sec. 101(a)(3)(B).[2] See Brown, 343 F.2d at 882-83.
 
 
 21
 This conviction is reinforced by our agreement with the district court that only the governing body of the District Council is empowered under LMRDA Sec. 101(a)(3)(B) to raise the dues payable solely by its members. This conclusion flows from the language of the statute, which provides that a nonlocal labor organization may raise the dues paid by its members by majority vote of delegates at its convention, by majority vote of the membership itself or, at least on an interim basis, by majority vote of its governing body. See 29 U.S.C. Sec. 411(a)(3)(B). In each case, however, the statute makes it clear that the increased dues must be enacted by the relevant body "of such labor organization," that is the organization whose members will be required to pay the increased dues. See id. This reading of the statute is not, as the UBC claims, inconsistent with the cases affirming an international union's authority to establish dues payable to affiliated local unions, see Ranes, 317 F.2d at 917; Denov v. Chicago Fed'n of Musicians, Local 10-208, 703 F.2d 1034, 1042 (7th Cir.1983), because these cases each involved an across-the-board dues increase for all members of the international union. See id. This interpretation of the statute is also consistent with Mori's holding that international union convention delegates may vote a dues increase for a minority of union members because the affected members in that case were not, as here, all members of a separate and distinct "labor organization," see Gordon v. Laborers' Int'l Union, 490 F.2d 133, 135 (10th Cir.1973) (district council constitutes "labor organization" under LMRDA), cert. denied, 419 U.S. 836, 95 S.Ct. 63, 42 L.Ed.2d 62 (1974), but rather were members of a specific craft who apparently were dispersed throughout the international union's affiliated locals. See Mori, 653 F.2d at 1280, 1284. Thus, the dues increase in Mori was again an across-the-board increase applicable to all members of the international union who qualified and was not, as here, a dues increase imposed solely on members of a distinct "labor organization."
 
 B. Attorneys' Fees
 
 22
 In their cross-appeal, plaintiffs contend that the district court abused its discretion when it denied their motion for attorneys' fees. Specifically, plaintiffs argue that the district court erred by applying an incorrect legal standard to their claim to fees under the common-benefit doctrine approved by the Supreme Court in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 393-94, 90 S.Ct. 616, 626-27, 24 L.Ed.2d 593 (1970), and Hall v. Cole, 412 U.S. 1, 5-9, 93 S.Ct. 1943, 1946-48, 36 L.Ed.2d 702 (1973). That doctrine, based on the courts' inherent equitable power to award attorneys' fees when the interests of justice so require, provides that attorneys' fees may be shifted to a nonprevailing party when "the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.' " Hall, 412 U.S. at 5, 93 S.Ct. at 1946 (quoting Mills, 396 U.S. at 393-94, 90 S.Ct. at 626-27). In this case, the district court correctly described the common benefit doctrine as it applies in cases brought under the LMRDA and then specifically found that "assessment of attorneys' fees against defendant would not be in the interest of justice." Order of August 14, 1989. Under these circumstances, we find no abuse of discretion in the district court's decision.
 
 
 23
 The judgment of the United States District Court for the District of Colorado is AFFIRMED for the reasons stated above.
 
 
 
 *
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 The UBC also cites Ranes in support of this contention. In Ranes, the Seventh Circuit held that
 an international union has authority under [LMRDA Sec. ] 101(a)(3)(B) to enact an across-the-board increase in dues to be paid by its members to its affiliated local unions and to bind its local unions by that action without submitting the question of the dues increase to a referendum of the locals' members.
 317 F.2d at 917 (emphasis added). This holding thus provides little support to the UBC's claim that it may impose a dues increase on the members of a handful of its affiliated local unions who have consistently voted to reject such an increase.
 
 
 [2]
 The failure of the democratic process in this instance is even more apparent when one considers that both the Colorado union membership and the delegates and officers of the District Council vigorously and unsuccessfully protested the UBC's decision to disregard the results of the membership's two previous votes on the revenue issue