BYBEE, Circuit Judge,
concurring in the judgment:
Although I concur in the judgment, I write separately to express my differing views about the proper interpretation of § 101(a)(3) of the Labor-Management Reporting and Disclosure Act (“LMRDA” or “Act”), 29 U.S.C. § 411(a)(3).[1] The major *917 ity concludes that subsections (A) and (B) of § 101(a)(3) “provide alternative methods for increasing dues or initiation fees or levying assessments” payable by members of a local labor organization. Maj. Op. at 910-12. The majority acknowledges that this interpretation leaves open the possibility that it is lawful under the LMRDA for a larger umbrella labor organization to levy dues and fees on the members of a local union — and that union alone— through procedures that do not involve a vote of the local union’s members. Maj. Op. at 916. The majority claims, however, that because the dues increase imposed only on the members of Hod Carriers Local Union No. 166 (“Local 166”) by the delegates to the Northern California District Council of Laborers (“NCDCL”) — an umbrella labor organization that represents Local 166 and other local labor organizations — was unlawful under the NCDCL constitution, there is no need to “speculate whether the NCDCL, if it were to amend its constitution, could impose a dues increase on the members of only one of its affiliated local unions” lawfully under the LMRDA. Maj. Op. at 916. I disagree with the majority’s assertion that subsections (A) and (B) provide “alternative methods” for approving levies.
The language of § 101(a)(3) is ambiguous — it is not “plain,” in spite of the majority’s claim to the contrary, Maj. Op. at 910[2] — but the text and structure of § 101(a)(3) convince me that subsections (A) and (B) do not offer alternative methods for imposing levies. Rather, subsections (A) and (B) offer the only lawful methods for imposing dues and fees payable by members of distinct types of labor organizations. Levies payable only by members of a local labor organization like Local 166 can only be lawfully approved under the procedures provided in subsection (A) of § 101(a)(3), procedures that require approval by a majority vote of the local labor organization using a secret ballot, either at a meeting or by referendum. Section 101(a)(3) does not permit a larger labor organization to impose levies that affect only members of a local labor organization, even if the members of the local labor organization are also members of the larger labor organization. Not only is this the most natural reading of the language of § 101(a)(3), but it is also a reading that fully comports with Congress’s broad pur *918 poses in enacting the LMRDA. This reading is fully consistent with our prior reading of the statute.
As I read the Act, the dues increase imposed on members of Local 166 by delegates to the NCDCL violated the LMRDA regardless of the specific terms of the NCDCL constitution discussed by the majority. My interpretation of the statute also leads to the result that the organizing fee approved in Resolution 12 did not violate the LMRDA, a result the majority also reaches based on its interpretation of the LMRDA. Though I reach the same conclusions as the majority, I cannot endorse the majority’s reasoning.
I
The core dictate of § 101(a)(3) is that “the rates of dues and initiation fees payable by members of any labor organization ... shall not be increased, and no general or special assessment shall be levied upon such members.” In other words, the stated purpose of the Act is to protect union members against increases in due and fees. This core dictate is — awkwardly— sandwiched between two “except clauses,” the second of which has two parts. In effect, there are three exceptions to the rule that members’ dues and fees shall not be increased.
The first exception, provided in the opening words of § 101(a)(3), is for “the case of a federation of national or international labor organizations.” This section of the LMRDA imposes no further conditions on the actions of a federation of national or international labor organizations. At least as far as § 101(a)(3) is concerned, a levy governed by this exception appears to be lawful regardless of the method followed for approving the levy. The two other exceptions, provided in subsections (A) and (B), are for “the case of a local labor organization” and “the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations,” respectively. Subsections (A) and (B) describe particular procedures that must be followed in approving increases in dues and fees. Structurally, the three exceptions combine to cover the full universe of labor organizations — “a federation of national or international labor organizations,” “a local labor organization,” and “a labor organization other than a local labor organization or a federation of national or international labor organizations.”
Only subsections (A) and (B) are at issue in this case. These provisions are less than clear and may be read in a couple of ways. The majority reads (A) and (B) as describing the methods by which different classes of unions may raise dues and fees on “any labor organization.”[3] The majority thus construes § 101(a)(3)(A) as though it began:
a local labor organization shall not increase the rates of dues and initiation fees payable by members of any labor organization nor levy general or special assessments upon such members except *919 (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting —
Similarly, the majority would read (B) as though it began:
a labor organization, other than a local labor organization or a federation of national or international labor organizations, shall not increase the rates of dues and initiation fees payable by members of any labor organization nor levy general or special assessments upon such members except (i) by majority vote of the delegates voting at a regular convention ____
For the majority, (A) and (B) are grants of power to the unions. They are “alternative methods for increasing dues or initiation fees or levying assessments.” Maj. Op. at 910. The majority would read (B) to authorize, for example, a regional, national, or international union to raise the dues and fees of a subset of the members of that union so long as it followed the procedures set forth in (B), and the majority does not temper its view of subsection (B) with an equality or uniformity principle. It is one thing to argue that an international union may raise local dues generally, or even raise dues on a certain subset of members that spans many local unions; it is quite another to claim that the international may single out a local union and raise its local dues over the objection of the local’s members. The majority’s untempered “alternative methods” theory allows (B) to facilitate an end-run around a local whose members do not want a dues increase, but whose leaders do, or worse yet, whose leaders do not have the voting power to overcome the will of an umbrella labor organization. An umbrella organization could even potentially use such an end-run to punish a local by raising its dues.
Although the majority’s reading is plausible, I do not think this is the best reading of the statute. I read these sections to protect union members against undemocratic efforts to raise their dues and fees, not to enable the “international unions[] ... to establish local unions’ rates of dues” without regard for equality or uniformity. Maj. Op. at 909. I would read § 101(a)(3)(A) as though it began:
the rates of dues and initiation fees payable by members of a local labor organization shall not be increased, and no general or special assessment shall be levied upon such members, except (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting. .
Similarly, I would read subsection (B) as if it began:
the rates of dues and initiation fees payable by members of a labor organization, other than a local labor organization or a federation of national or international labor organizations, shall not be increased, and no general or special assessment shall be levied upon such members, except (i) by majority vote of the delegates voting at a regular convention ____
Under my reading, a union may levy dues and fees only on its own members by following the procedures set forth in (A) and (B). Nothing in § 101(a)(3) authorizes an umbrella labor organization to single out a local and raise the dues or fees of the local’s members. Section 101(a)(3) may allow an umbrella organization to levy dues and fees on its own members, and perhaps even a subset of its members; but at the very least, § 101(a)(3) prevents such a levy from being imposed only on the members of a single subsidiary union.
*920 I believe this to be a more natural reading of § 101(a)(3).[4] Section 101(a)(3)’s exceptions qualify the core dictate’s prohibition on increases in dues and fees “payable by members of any labor organization” or assessments “levied upon such members.” 29 U.S.C. § 411(a)(3) (emphasis added). Thus, subsection (A) dictates the procedures that must be followed for a levy payable by members of a local labor organization. Although subsection (A) is not so didactic as to specify which labor organization’s “members” should take part in the required secret ballot voting, it only makes sense to read this as connected to the “members” mentioned in the core dictate, that is, as referring to the members of the labor organization who will pay the levy.
Similarly, it is only natural to read the exception in subsection (B) for “the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations” as qualifying the core dictate’s general prohibition on levies payable by members of those unions. Thus, subsection (B) dictates the approval methods that must be followed in order for a levy payable by members of a “labor organization, other than a local labor organization or a federation of national or international labor organizations,” to be lawful under § 101(a)(3). If anything, subsection (B) is even more clear than subsection (A) because it identifies the “members” to be involved in the voting. Each voting option under subsection (B) calls for a vote among members or representatives of “such labor organization,” which logically must refer back to the labor organization whose members will be paying the levy. As the Tenth Circuit explained, subsection (B) “makes it clear that the increased dues must be enacted by the relevant body ‘of such labor organization,’ that is the organization whose members will be required to pay the increased dues.” Patterson v. United Bhd. of Carpenters & Joiners of Am. AFL-CIO, 906 F.2d 510, 515 (10th Cir.1990).
In sum, subsection (A) prescribes the required voting methods for the lawful approval of a levy payable by members of a local labor organization, and requires majority approval of the members of the local labor organization voting by secret ballot; and subsection (B) prescribes the required voting methods for the lawful approval of a levy payable by members of a labor organization other than a local labor organization or a federation of national or international labor organizations, and requires no secret ballot. The subsections are symmetrical and preserve the rights of union members to vote directly on any dues increases or, under subsection (B), at least to be equitably represented before any dues are levied on them. An international union can impose due and fees on its international members, a regional union on its regional members, and a local union on its members. This outcome is respectful of principles of equality and uniformity that are disregarded by the majority’s approach.
II
My reading of § 101(a)(3) set forth above is supported by Congress’s broad *921 objectives in enacting the LMRDA, and particularly Title I of the LMRDA, which includes § 101(a)(3). Title I of the LMRDA is self-consciously titled “Bill of Rights of Members of Labor Organizations.” 29 U.S.C. §§ 411-15; see also Maj. Op. at 907-08 (stating that Title I is a “statutory ‘Bill of Rights’ ‘specifically designed to promote the full and active participation by the rank and file in the affairs of the union.’ ” (quoting Hall v. Cole, 412 U.S. 1, 7-8, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973)) (internal quotation marks omitted)). The Supreme Court has said that “Title I [of the LMRDA] is designed to guarantee every union member equal rights to vote and otherwise participate in union decisions.” Local No. 82, Furniture & Piano Moving v. Crowley, 467 U.S. 526, 536, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984). “[T]he rights enumerated in Title I [are] vital to the independence of the membership and the effective and fair operation of the union as the representative of its membership.” Hall, 412 U.S. at 8, 93 S.Ct. 1943 (internal quotation marks omitted). “In providing such protection, Congress sought to further the basic objective of the LMRDA: ‘ensuring that unions [are] democratically governed and responsive to the will of their memberships.’ ” Sheet Metal Workers’ Int’l Ass’n v. Lynn, 488 U.S. 347, 352, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989) (alteration in original) (quoting Finnegan v. Leu,, 456 U.S. 431, 436, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982)).
As the majority notes, and as we have previously recognized, the purpose of § 101(a)(3) specifically “ ‘is to curb the potential for autocratic and unrepresentative rule of union officers by preventing the leadership of a union from imposing arbitrary financial extractions unilaterally on its membership.’ ” Maj. Op. at 908 (quoting Burroughs v. Operating Eng’rs Local Union No. 3, 686 F.2d 723, 728 (9th Cir.1982)). “Section 101(a)(3) was designed to vest control over increases in rates of dues in the union members, not the union management.” Burroughs, 686 F.2d at 728. It thus “guaranteed a member’s ‘right to participate in deciding upon the rate of dues, initiation fees, and assessments.’ ” Am. Fed’n of Musicians v. Wittstein, 379 U.S. 171, 181, 85 S.Ct. 300, 13 L.Ed.2d 214 (1964) (quoting H.R.Rep. No. 741, at 7 (1959)). Judge Posner has described § 101(a)(3) as “intended to ensure that dues or assessments are not levied by unrepresentative union leaders,” and as “intended to bar taxation without representation.” Michelotti v. Air Line Pilots Ass’n, 61 F.3d 13, 15 (7th Cir.1995); see also Burroughs, 686 F.2d at 730 (describing a situation in which union leadership had the power to decide whether or not the dues of local union members would be increased, without submitting the matter to a vote of the local union’s members, as “a result ... Congress intended to prohibit when it enacted section 101(a)(3)”).
These principles were violated when members of Local 166 — and no one else— had their local dues increased by the NCDCL following a vote at a convention of sixty delegates only two of whom were Local 166 members. Though it is true that Local 166 was minimally represented at the convention that raised its dues, it is hard to say that an interpretation of § 101(a)(3) that allows such uneven “taxation” from above is supported by the policy of “ensuring] that dues or assessments are not levied by unrepresentative union leaders.” Michelotti, 61 F.3d at 15. Rank and file members of Local 166 are not full and active participants in their own union affairs if they do not get to vote whether to increase them own dues, but are subject to the votes of members of other local unions, whose dues are not at risk. The right to democratic control over such levies is one of the rights guaranteed by the LMRDA *922 in § 101(a)(8), and the procedure followed here violated some pretty basic tenets of American democracy.
The democratic principles behind the LMRDA are reflected in my interpretation of § 101(a)(3), which requires local union members to approve their own dues increases. And these principles would be violated by a reading that would permit a regional labor organization to raise the dues of one local, while maintaining a lower assessment for everyone else. This point was previously recognized by the district court in White v. Local 207, which said that “[a] holding that a district convention could set local dues for one single local union would be to completely sterilize the provisions of [§ 101(a)(3)(A)].” 387 F.Supp. 53, 56 (WJD.La.1974). A regional union such as the NCDCL may no more raise the dues of a single local union than Congress may tax the citizens of one state at a higher rate than citizens of other states. Cf, e.g., U.S. Const, art. I, § 8, cl. 1 (“[A]ll Duties, Imposts and Excises shall be uniform throughout the United States.”); id. art. I, § 9, cl. 6 (“No Preference shall be given by any Regulation of Commerce or Revenue to the Ports of one State over those of another____”).
The majority characterizes its reading of the statute as balancing the democratic principles underlying the LMRDA with “umbrella labor organizations’ interest in self-governance,” noting parenthetically that “Congress meant to further the LMRDA’s basic policy of promoting democratic union governance “with a minimum of interference in the internal affairs of unions.’ ” Maj. Op. at 910 (quoting Crowley, 467 U.S. at 539, 104 S.Ct. 2557). Such balance is not lost in my interpretation of the statute, as § 101(a)(3) still offers various lawful approval methods under each of subsection (A) and subsection (B). By contrast, the union members’ “Bill of Rights” is of no value if it can be trumped so easily by the majority’s “hands off” principle.
Ill
My reading is also fully consistent with our prior reading of § 101(a)(3), while the majority’s position outflanks anything that our court, or any other court, has previously approved. Although § 101(a)(3) has not commanded much judicial attention, we previously construed it in Mori v. International Brotherhood of Boilermakers, 653 F.2d 1279 (9th Cir.1981). In Mori, we held that the LMRDA authorized an international union to establish minimum dues for members of the international union who worked in the construction trade by a majority vote of delegates at the convention of the international union under subsection (B) of § 101(a)(3). Id. at 1284-85. This decision might be understood as endorsing the position that subsection (B) generally allows any “labor organization, other than a local labor organization or a federation of national or international labor organizations,” to increase the local dues of any subset of that labor organization’s members in any manner approved by a majority of delegates at a convention of the labor organization, including any increase imposed on a subset consisting only of the members of one affiliated local union. See Maj. Op. at 909-12, 916. Our decision in Mori, however, was not so broad.
In Mori we considered whether an international union could establish minimum dues “for a single craft within affiliated local unions.” Mori, 653 F.2d at 1280. We approved the dues increase for “field construction members” who belonged to various unions within the international; the increase did not affect the dues of other members of the locals. Id. at 1281. The increase “affect[ed] neither a single *923 local nor all locals, but all locals within a single craft.” Id. at 1285 n. 2. We briefly considered the broad proposition that “§ 101(a)(3) places no substantive limitations on convention action concerning dues” and thus allows an appropriately established convention of an umbrella labor organization to “establish local mínimums in any way a majority of delegates select,” but concluded that we “need not embrace so expansive a view of § 101(a)(3)(B) in order to sustain the convention action” at issue. Id. at 1284. In so concluding, we suggested that such a broad reading of § 101(a)(3)(B) “might seem at odds with the congressional purpose of shielding union members from ‘arbitrary financial actions.’” Id. (quoting 105 Cong. Rec. 2668 (1959)).
In a pre-Mori case, Ranes v. Office Employees International Union, the Seventh Circuit approved local dues increases enacted by an international union consistent with the procedures required by § 101(a)(3)(B). 317 F.2d 915, 916, 918 (7th Cir.1963). But those increases were across-the-board increases applicable to every local union in the international. Id. at 916. The international union could have accomplished the same thing by raising its own fees and remitting the funds raised to the locals. The Seventh Circuit recognized that the international had “acted lawfully within a traditional sphere of its power to control its affiliated local unions.” Ranes, 317 F.2d at 918. Nothing in Ranes, however, sanctions an international singling out one local and increasing its dues. See id. at 918 n. 6 (“The provisions of (A) govern the dues structure of independent company and unaffiliated local unions, and should apply, as well, to increases in the dues charged by affiliated locals above the constitutional minima prescribed by their parent unions.”).
As the Tenth Circuit explained in Patterson v. United Brotherhood of Carpenters & Joiners of America AFL-CIO, my reading of the statute is consistent with both Ranes and Mori. In Patterson, the Tenth Circuit held that an international union could not lawfully establish minimum dues for the seven local unions affiliated with an umbrella district council. 906 F.2d at 512-15. In so holding, the court asserted that subsection (B) of § 101(a)(3) “makes it clear that the increased dues must be enacted by the relevant body of ... the organization whose members will be required to pay the increased dues,” id. at 515 (internal quotation marks omitted), a reading of subsection (B) that is consistent with my interpretation. The Patterson court concluded that its reading was consistent with Ranes and Mori. As the Patterson court explained:
This reading of the statute is not ... inconsistent with the cases affirming an international union’s authority to establish dues payable to affiliated local unions because these cases each involved an across-the-board dues increase for all members of the international union. This interpretation of the statute is also consistent with Mori’s holding that international union convention delegates may vote a dues increase for a minority of union members because the affected members in that case were not, as here, all members of a separate and distinct “labor organization,” but rather were members of a specific craft who apparently were dispersed throughout the international union’s affiliated locals. Thus, the dues increase in Mori was again an across-the-board increase applicable to all members of the international union who qualified and was not, as here, a dues increase imposed solely on members of a distinct “labor organization.”
*924 Patterson, 906 F.2d at 515 (internal citations omitted). As with the dues increase in Patterson which was imposed solely on members of a distinct district council, the dues increase in the instant case was imposed solely on the members of a distinct local labor organization; it was not, as in Mori, an across-the-board dues increase impacting all members of an umbrella labor organization who fit some criteria other than membership in a distinct smaller organization.
Moreover, our case is also distinguishable from Mori in a manner in which Patterson was not. Patterson, like Mori, involved the imposition of a dues increase by an international labor organization. Here, by contrast, the dues increase in question was imposed by a district council. This may not be relevant when it comes to the language of § 101(a)(3), under which both international unions and district councils fall under subsection (B)’s category of “labor organization^], other than a local labor organization or a federation of national or international labor organizations.” It is, however, relevant when considering the extent to which Mori controls our inquiry. In Mori, we based our approval of an international labor organization’s imposition of minimum dues applicable only to members in a certain craft, across all affiliated local unions, on the fact that “an international’s setting of local dues is part of ‘traditional structures and practices,’ ” combined with “the Supreme Court’s intimation ... that traditional practices are relevant to an interpretation of the Act.” Mori, 653 F.2d at 1284 (quoting Ranes, 317 F.2d at 917). In Mori, this court had been presented with substantial evidence of the traditional practice of international labor organizations playing a role in setting dues for affiliated locals. Id. at 1283-84. This traditional practice, which was arguably also relevant in Patterson to a dues increase imposed by an international union on members of several local unions, is not relevant to our analysis of the imposition of dues on members of a local labor organization by a district council rather than an international labor organization.
Finally, in Mori, we recognized that, in cases where a labor organization is imposing a levy on a minority of its members, it is relevant whether there is any “reason to distrust the democratic process at work.” Mori, 653 F.2d at 1285. In finding no reason to distrust the democratic process in Mori, we relied on (1) the fact that the increased dues would be retained by local construction lodges for their own benefit; (2) the representation of members of the construction trade by delegates at the convention of the international labor union that approved the dues; and (3) the lack of anything in the record demonstrating that the majority of the international union was seeking to exploit a minority. Id. at 1284-85. Here, at the very least, the fact that only two of the sixty delegates who approved the dues increase represented the members of Local 166 who would bear the full brunt of the increase provides ample reason to distrust the democratic process at work. The LMRDA protects union members from such abuses.
IV
In the instant case, the organizing fee approved in Resolution 12 did not violate the LMRDA. The organizing fee was a levy imposed upon the members of an international labor organization (the Laborers International Union of North America, or LIUNA), and thus was lawful as long as the method of approval comported with subsection (B) of § 101(a)(3). One of the allowable methods under subsection (B) is “a majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days’ *925 written notice to the principal office of each local or constituent labor organization entitled to such notice.” This is exactly the manner in which Resolution 12 was approved, so the organizing fee was legally imposed, as the majority concludes. Maj. Op. at 912, 914.
The dues increase imposed on members of Local 166 by the NCDCL, on the other hand, violated the statute. The dues increase was imposed only on members of Local 166, a local labor organization, and thus required approval via one of the methods dictated by subsection (A) of § 101(a)(3), each of which require a secret ballot vote of the members of Local 166. No secret ballot vote was taken of the members of Local 166, so the dues increases was not lawful. The majority comes to the same conclusion, but bases its decision on the fact that, under the NCDCL constitution, the “members” of the NCDCL are the delegates from the affiliated local unions rather than the members of the local unions. Maj. Op. at 914-16. I offer no comment on the validity of this rationale for the majority’s holding. Even if the members of Local 166 are in fact members of the NCDCL, because the exception covering levies payable by members of the smaller labor organization — and not also the exception governing levies payable by members of the larger umbrella labor organization — governs, the dues increase was not lawful.
V
Section 101(a)(3) of the LMRDA is best read as requiring the members of a local labor organization to approve in a secret ballot all dues and fees increases applicable only to them. The LMRDA was enacted to protect rank and file union members from undemocratic union decisionmaking. The dues increase imposed on Local 166 in this case was approved in a manner that does not reflect this purpose. The majority reached the right conclusion, but its interpretation of § 101(a)(3) is problematic and will result in the acceptance of undemocratic labor processes in future cases. I can only concur in the judgment.

. The full text of § 101(a)(3) reads as follows: Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—
(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or
(B) in die case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' witten notice to the *917 principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: Provided, That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization.
29 U.S.C. § 411(a)(3).

. Ambiguity in the LMRDA comes as no surprise in light of the legislation's history. As explained by Archibald Cox, who the Supreme Court has described as "actively participating] in shaping much of the LMRDA,” Wirtz v. Local 153, Glass Bottle Blowers Ass’n, 389 U.S. 463, 468 n. 6, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968):
The [LMRDA] contains more than its share of problems for judicial interpretation because much of the bill was written on the floor of the Senate or House of Representatives and because many sections contain calculated ambiguities or political compromises essential to secure a majority.
Archibald Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich. L.Rev. 819, 852 (1960); see also Usery v. Local Union No. 639 Int’l Bhd. of Teamsters, 543 F.2d 369, 387 n. 50 (D.C.Cir.1976) (describing Cox as "a principal consultant to the draftsmen” of the LMRDA).

. See, e.g., Maj. Op. at 911 (“[W]e hold that § 101(a)(3)(A) and (B) establish alternative methods by which labor organizations are authorized to increase dues or initiation fees or to levy assessments on their members ....” (emphasis added)). It seems clear that this is how the majority views the statute, even if the majority is at times inexact in its wording when discussing § 101(a)(3). See, e.g., id. at 909 ("Subsection (B) ... applies to dues or initiation fees increases or assessments imposed on members of a labor organization, ‘other than a local labor organization or a federation of national or international labor organizations.' Under subsection (B), labor organizations, such as international unions, are authorized to increase dues or initiation fees or levy assessments (some emphasis added) (internal citation omitted)).

. The majority asserts that my "interpretation of the statute ... does not account for its plain text, particularly the word 'or' that connects 29 U.S.C. § 411(a)(3)(A) and (B)." Maj. Op. at 910 n. 10. I confess to not accounting for "plain text” where there is none. The "or” suggests that subsections (A) and(B) describe distinct methods by which different labor organizations may raise dues and fees on their own members; the "or” does not suggest that subsections (A) and (B) provide alternative methods by which a regional organization, or any other umbrella labor organization, may raise dues or fees only on the members of a smaller labor organization.